TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
CHRISTIAN R. ACEVEDO (Cal. Bar No. 323718)
Special Assistant U.S. Attorney
Riverside Branch Office
     3403 10th Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6922
     Facsimile: (951) 276-6202
     E-mail:    christian.acevedo@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>ROSHAD BLAKE GREEN,<br><br>            Defendant. | ED CR No. 19-28-JGB-1<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT ROSHAD BLAKE GREEN<br><br>Hearing Date: May 17, 2021<br>Time: 2:00 p.m.<br>Courtroom of the Honorable<br>Jesus G. Bernal |

Plaintiff, United States of America, by and through its attorney of record, the Acting United States Attorney for the Central District of California, and Special Assistant United States Attorney Christian R. Acevedo, hereby files its Sentencing Position.

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, the United States Probation Office's Presentence Investigation Report and such further evidence and argument as the Court may permit.

Dated: May 3, 2021               Respectfully submitted,

                                 TRACY L. WILKISON
                                 Acting United States Attorney

                                 BRANDON D. FOX
                                 Assistant United States Attorney
                                 Chief, Criminal Division

                                 JERRY C. YANG
                                 Assistant United States Attorney
                                 Chief, Riverside Branch Office


                                 */s/ Christian R. Acevedo*
                                 CHRISTIAN R. ACEVEDO
                                 Special Assistant U.S. Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Roshad Blake Green ("defendant") shamelessly partook in a widespread mail theft, identity theft, and bank fraud scheme. The government respectfully requests that the Court impose a sentence of 54 months' imprisonment, followed by a three-year term of supervised release, and that the Court order defendant to pay $1,324.01 in restitution and a $200 special assessment. This sentence is warranted based on defendant's calculated choice to steal from and defraud many people and banks, the absence of significant mitigating circumstances, and defendant's criminal history.

**II.   STATEMENT OF FACTS**

Beginning on a date unknown and continuing until at least on or about January 15, 2019, in Riverside and San Bernardino Counties, within the Central District of California, and elsewhere, defendant and his co-defendant, Lizet Viramontes ("Viramontes") knowingly and with intent to defraud federally insured financial institutions ("banks"), devised and executed a scheme to obtain money, funds, credits, assets, and other property in the custody and control of the banks by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts. (Plea Agreement, ECF No. 105, ¶ 12.)

The bank fraud scheme that defendant and Viramontes executed involved stealing mail and impersonating bank customers, whom defendant and Viramontes knew to be real people. Defendant and Viramontes would steal mail from mailboxes in Riverside and San Bernardino Counties and elsewhere and would use the stolen mail to

1

obtain personally identifiable information ("PII") of real people, as well as credit or debit cards belonging to real people. Defendant and Viramontes would then rent post office boxes in their own names. Defendant and Viramontes would then contact victims' banks and, impersonating their victims, would arrange for the victims' addresses to be changed, such that the victims' mail from their banks would be sent to defendants' post office boxes. Defendant and Viramontes would then receive victims' blank checks, debit and credit cards at the post office boxes controlled by defendant and Viramontes without victims' knowledge or authorization. Defendant and Viramontes would use the intercepted checks, credit and debit cards to make unauthorized purchases at retail locations or to obtain cash from ATMs. Defendants acted with intent to defraud in that they acted with an intent to steal from and cheat the banks. Id.

In furtherance of the scheme, defendant committed acts meant to defraud the banks, including the following acts:

On or about August 9, 2018, defendant, without authorization, attempted to make a $1,226 purchase at a Walmart in Rialto, California, using an American Express card ending in 2025 in the name of victim A.M. Id.

On or about August 9, 2018, defendant, without authorization, attempted to make a $159 purchase and an $828 purchase at a Walmart in Fontana, California, using an American Express card ending in 2025 in the name of victim J.M. In so doing, defendant knowingly used, without lawful authority, means of identification, that is, victim J.M.'s name and victim J.M.'s American Express account number ending in 2025, which defendant knew belonged to a real person, J.M. Later

that day, defendant called American Express Bank, pretending to be victim J.M., and then again later pretending to be victim J.M.'s mother, A.M., regarding the attempted $828 purchase at Walmart, and requested that American Express send a new credit card to defendants' post office box.  Id.

On or about August 10, 2018, defendant stole mail from J.M. and A.M.'s residential mailbox.  Id.

On or about December 4, 2018, defendant, without authorization, made a $1,675.51 purchase at a Walmart in Colton, California, using a Bank of America card ending in 6440 in the name of victim K.N.  Id.

On or about January 15, 2019, at an Econo Lodge hotel in San Bernardino, California, defendant possessed approximately 69 pieces of stolen mail.  Id.

During the scheme, defendant and Viramontes victimized at least 370 different people and businesses by possessing their mail, PII, bank information, checks or other negotiable instruments, or by using victims' information to their benefit without authorization.  The loss amount associated with the scheme is at least $391,000 ($74,753.06 in actual losses), calculated using the face value of checks and other negotiable instruments they unlawfully possessed between August 2018 and January 2019, the dollar value of fraudulent bank or retail transactions, and attributing a $500 value to each unauthorized access device (bank, credit, or debit account number) they possessed.  The losses organized by financial institution are as follows:

Bank of America :  $5,478.10
Capital One:  $1,341.34

  Citibank: $18,269.77

  Discover Bank: $6,554.45

  Netspend Bank: $2,648.20

  Synchrony Bank: $36,969.88

  BBVA Bank: $6,267.76

  US Bank: $3,940

  Vons Credit Union: $6,665

  Wells Fargo Bank: $32,061.22

  Mail held and intended for delivery to the post office boxes controlled by defendant and Viramontes, and mail actually delivered to those boxes, contained unauthorized checks and access devices reflecting a minimum value under the Sentencing Guidelines of at least $13,500 in intended losses. The cars used by defendant and Viramontes contained stolen mail, PII, and unauthorized checks and access devices reflecting a minimum value under the Sentencing Guidelines of at least $95,109.08 in intended losses.  Defendants' Econo Lodge hotel room contained stolen mail, PII, and unauthorized checks and access devices reflecting a minimum value under the Sentencing Guidelines of at least $151,194.32 in intended losses. Id.

**III. GUIDELINES AND CRIMINAL HISTORY CALCULATION**

  On April 12, 2021, the United States Probation Office ("USPO") disclosed its Presentence Report ("PSR"), calculating a guidelines range of 41 to 51 months for count five, based on an offense level of 20 and a criminal history category of III. (PSR ¶ 80.)  The USPO further noted that the term of imprisonment on count eleven must be imposed consecutively. (PSR ¶ 79.)

4

The government concurs with the PSR's calculation of defendant's criminal history, offense level, and corresponding guidelines range. The government further recommends a downward variance because defendant has taken steps to mitigate the spread of COVID-19 by agreeing to make all court appearances virtually.

**IV.   GOVERNMENT'S SENTENCING RECOMMENDATION**

The Sentencing Guidelines are "the 'starting point and the initial benchmark' . . . and are to be kept in mind throughout the [sentencing] process." United States v. Carty, 520 F.3d 984, 996 (9th Cir. 2008) (internal citations omitted).  The Supreme Court and the Ninth Circuit recognize a "Guidelines sentence 'will usually be reasonable." Rita v. United States, 551 U.S. 338, 351 (2007).

Section 3553(a) sets forth factors for the Court to consider alongside the Guideline range.  A sentence of 54 months' imprisonment is appropriate in light of "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B).

**A.   Seriousness of the Offense**

Defendant's scheme was far-reaching and had a drastic impact on the community.  Defendant victimized citizens within the Central District who entrusted the U.S. Postal Service with safeguarding financial and personal documents.  Defendant was relentless in stealing mail to fuel his and his co-defendant's fraudulent scheme. People use the mail every day, as well as checks and credit cards,

and they do so with the expectation that their mail, checks, and credit card information will not be stolen and abused.  Defendant's crime exposed the public to tangible harm, and his sentence must reflect that.

Defendant was on a non-stop fraud spree with his co-defendant, stealing mail and victimizing hundreds of his fellow citizens.  Not only that, but defendant's conduct was remarkably brazen.  It takes an extraordinarily determined defendant to steal a victim's PII and access device, use that device at a store to make purchases, call a bank and pretend to be a victim, then pretend to be that victim's mother, in an elaborate scheme to get a hold of a victim's credit card account.  This was hardly a crime of desperation.  Defendant showed total indifference for the security of his fellow citizens' finances and personal information, taking the stolen credit cards, checks, and mail on shopping sprees throughout the Inland Empire.  A 54-month sentence would promote respect for the law by showing defendant that his actions do not go unanswered, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and will protect the public from further crimes.  See 18 U.S.C. § 3553(a)(2).

**B.   Nature of the Offense and Defendant's History**

The Court should consider the nature and circumstances of the offense and the history and characteristics of defendant.  18 U.S.C. § 3553(a)(1).  As discussed above, the offense involved a brazen theft and fraud scheme that impacted citizens all throughout the Central District of California as well as numerous financial institutions.

Defendant also has a history of failing to respect the law. His disregard began no later than the age of eighteen, when defendant was convicted of felony grand theft from the person of another and was sentenced to one year in jail and three years of probation. (PSR ¶ 23.)

In 2008, defendant served ten days in jail and 3 years of probation for driving with a suspended license – showing that defendant believed that he was above the law in believing he should still be able to drive a car after the state revoked his license. (PSR ¶ 24.)

In 2011, defendant continued what he started at 18 and started stealing again – serving nine days in jail and five years of probation for felony grand theft. (PSR ¶ 27.)

In 2013, defendant thumbed his nose at the law again, driving on a suspended license resulting in a sentence of 36 months' probation as a result. (PSR ¶ 28.)

Finally, defendant would not even pretend to be on his best behavior when it mattered, underscoring his complete disregard for the law. At the time defendant was out stealing mail and defrauding his fellow citizens in the inland empire, defendant was on probation, having racked up years of supervision from his last two convictions. (PSR ¶ 30.)

Clearly, defendant's prior sentences have done little to deter him from committing future crimes. Moreover, he has already been sentenced for the same kind of crimes (stealing) and continues to commit these offenses now. It is time to up the ante to send a

message to defendant that his conduct is not only reprehensible but comes with consequences.

At the same time, and to defendant's credit, and as evidence in mitigation, defendant informed the government he intended to plead guilty well before the trial date, which "permitted the government to avoid preparing for trial and permitted the government and the court to allocate resources efficiently." See U.S.S.G. §3E1.1(b). Also, because defendant agreed to proceed with the remainder of his case over video teleconference and telephone, rather than appearing in person, he has chosen to help prevent the spread of COVID-19. The government, accordingly, recommends a downward variance for defendant, after taking into account his timely acceptance of responsibility during the ongoing COVID-19 pandemic.

Given defendant's early acceptance of responsibility and willingness to mitigate COVID-19 spread through virtual appearances, a Guidelines sentence, in addition to a downward variance, of 54 months' imprisonment is an appropriate sentence.

### C. Avoid Unwarranted Sentencing Disparities

The Court should minimize sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6). One way courts ensure consistent sentences for similarly situated defendants across courtrooms, districts, and the country is by applying the sentencing guidelines uniformly. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); see also Gall v. United States, 552 U.S. 38, 54 (2007)

("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Sentencing Guidelines ranges."). Thus, a Guidelines-range sentence in this case will ensure a sentence that is consistent with similarly situated defendants across the country.

The Sentencing Guidelines effectively capture defendant's misconduct while fairly taking into account his criminal history. A proper Offense Level calculation in this case would put defendant's offense level at 23. After acceptance of responsibility (to include a third point), the defendant's offense level would be 20. With a Criminal History Category of III, the proper Guidelines Range would be 41 to 51 months. Thereafter, a downward variance is warranted because defendant has demonstrated a clear commitment to keeping his community safe from COVID-19, by agreeing to virtual appearances.

In addition, 18 U.S.C. § 1028A and the Sentencing Guidelines call for a 24-month consecutive sentence be applied following the calculation of the appropriate sentence for bank fraud.

### D. Restitution

Consistent with the plea agreement in this case, the government respectfully requests the Court order defendant to pay total restitution in the amount of $1,324.01 to two victims: $837.76 (Bank of America) and $486.25 (Capital One).

## V. CONCLUSION

The government respectfully requests that the Court impose a sentence of 54 months' imprisonment (that is a 33-month term on count five, and a 24-month term on count eleven), followed by a three-year period of supervised release, and a mandatory special assessment of

$200. The government further recommends that defendant be ordered to pay $1,324.01 in restitution to the institutions he victimized.